[re Docket Item 22]

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
ROBERT ROTH,                    HONORABLE JEROME B. SIMANDLE

          Plaintiff,            CIVIL NO. 07-2596 (JBS/JS)

     v.
                                         OPINION
MARINA ASSOCIATES,

          Defendant.
```

APPEARANCES:

Robert J. Hantman, Esq.
HANTMAN & ASSOCIATES
1515 Broadway
11th Floor
New York, NY 10036
     Attorney for Plaintiff Robert Roth

Russell L. Lichtenstein, Esq.
Victor P. Wasilauskas, Esq.
COOPER, LEVENSON, APRIL, NIEDELMAN & WAGENHEIM, PA
1125 Atlantic Avenue
Third Floor
Atlantic City, NJ 08401
     Attorneys for Defendant Marina Associates

**SIMANDLE**, District Judge:

      This matter is before the Court upon the motion of Defendant Marina Associates for summary judgment [Docket Item 22] on Plaintiff Robert Roth's negligence claim.  Defendant does business as Harrah's Atlantic City, Inc. ("Harrah's").  The claim arises as a result of a slip and fall which allegedly occurred on Harrah's premises, and which Plaintiff attributes to Defendant's

negligence.  For the reasons explained below, the Court will deny Defendant's motion.

**I.   BACKGROUND**

    **A.   Facts**

        1.   <u>Plaintiffs' Allegations</u>

This case arises out of a slip and fall that occurred on Defendant's premises in Atlantic City, New Jersey.  (Compl. ¶ 5.) According to the Complaint, on June 5, 2005,[1] Plaintiff was walking from the hotel and casino exit toward the parking garage, when he stepped into a "hazardous trap like condition," fell, and sustained severe and permanent injuries.  (<u>Id.</u>)  As a result of the fall, Plaintiff claims that he will be unable to perform normal activities and has incurred medical expenses.  (<u>Id.</u> at ¶ 10.) Plaintiff alleges that Defendant's employees had actual and constructive notice of the dangerous condition and that their negligence was the sole cause of the incident.  (<u>Id.</u> at ¶¶ 6-8.)

        2.   <u>Plaintiff's Deposition Testimony</u>

Plaintiff recounted the events that gave rise to this lawsuit at his deposition.  According to Plaintiff, he checked out of Harrah's at approximately 10:30 or 11:00 in the morning. (Roth Dep. at 52, 57.)  Although Plaintiff testified that it was

---

[1] Although the Complaint indicates the incident occurred on June 5, 2005, the Incident Report filed at Harrah's suggests that the incident occurred on May 8, 2005.  (Wasilauskas Cert. Ex. B at 1.)

a sunny day, he also stated that the area where the accident occurred has poor lighting, even on bright days.  (Id. at 91.) Plaintiff was not wearing his eyeglasses, but testified that he only needed them for reading at the time.  (Id. at 113.)

Carrying a duffel bag and a plastic supermarket bag, Plaintiff attempted to walk from the main entrance at the valet parking area of the casino to the self-park garage.  (Id. at 57-59.)  Plaintiff said that one minute after leaving the building, he turned left to walk along a route he had taken many times before.  (Id. at 61, 64.)  The route consisted of navigating a "very narrow passage" past a "gigantic flower pot on the left." (Id. at 61.)  Plaintiff estimated that approximately four to five feet across the walkway was a square of dirt or mulch with a tree growing in the center.  (Id. at 74, 85.)  The sidewalk snaked to the street, where Plaintiff planned to make a sharp left into the crosswalk, followed by a sharp right toward the self-park garage.[2]  (Id. at 61.)

According to Plaintiff, he tripped during the walk, his right foot falling into the mulched planter "as if I had been hooked by a bear trap."  (Id. at 63.)  Plaintiff's foot got caught in the corner of the square filled with dirt and mulch. (Id. at 92-93.)  Plaintiff testified that when he subsequently

---

[2] Plaintiff testified that he could have used an escalator and a long walkway to arrive at the garage, but he instead chose the outside walk.  (Roth Dep. at 64.)

fell, half of his body landed in the dirt.  (Id. at 86.)  Falling flat on his back, Plaintiff's foot went under him, and his right shoe came off of his foot and flew into the air.  (Id. at 74, 86.)  According to Plaintiff, his foot landed in a deep area that covered the entire height of his shoe.  (Id. at 93.)  Plaintiff testified that while he was on the ground, a valet named Brian asked if he needed help, and several other employees from Harrah's also arrived at the scene.  (Id. at 87, 109.)  Plaintiff testified that he declined the invitation to visit the nurse, and instead sat on the ground for approximately twenty minutes before Brian helped him up.  (Id. at 110-11.)  According to Plaintiff, he then walked without assistance to his car, where he sat for an hour, cleaning the wound with alcohol before driving away.  (Id. at 111.)

    3. Other Evidence

     a. Incident Report

According to Defendant's report of the incident, Robert Roth was injured on the sidewalk at the valet site at 12:30 P.M. on May 8, 2005.  (Wasilauskas Cert. Ex. B at 1.)  It appears that Albert Barrett prepared the report and Greg Reichenbach was the shift manager at the time of the incident.  (Id.)  The report indicates that Plaintiff stepped onto an area covered with mulch, lost his balance, and fell.  (Id.)  The report documents that Plaintiff suffered an injury but refused treatment.  (Id.)

Additionally, the report specifies that an employee checked and took photographs of the scene. (Id.)  On the report, next to the indication about photographs, the words "TOT Risk"[3] are hand-written. (Id.)

        b.    Deposition Testimony of Security Supervisor Albert Barrett

Albert Barrett, who prepared the incident report, has been the security supervisor at Harrah's since 1995. (Barrett Dep. at 5.)  According to his deposition testimony, he is responsible for the safety and security of guests, employees and the physical building. (Id.)  Mr. Barrett testified that he completed the report on the day of Plaintiff's incident. (Id. at 9.) According to Mr. Barrett, his words "TOT Risk" means to turn over to risk management, indicating that the photographs of the scene were submitted to the risk management department, which handles liability claims. (Id. at 21-22.)  Although the person who initiates the report ordinarily takes the photographs, Mr. Barrett is unsure whether he or someone else took the pictures of this incident, and he does not recall if he ever saw them. (Id. at 22, 24.)  According to a letter from defense counsel, the photographs of the scene have not been located. (Carvajal Cert. Ex. D at 2.)

---

[3] Security supervisor Albert Barrett testified that "TOT Risk" indicates that the photographs were turned over to risk management. (Barrett Dep. at 21-22.)

5

          c.    <u>Deposition Testimony of Lead Groundskeeper James Mason, Sr.</u>

James Mason, Sr., who has served as lead groundskeeper at Harrah's for approximately 20 years, maintains the outside grounds, in-house moving, and cleaning the property at Harrah's. (Mason Dep. at 5.)  Mr. Mason is responsible for the maintenance of the sidewalk squares, where Plaintiff's incident occurred. (<u>Id.</u> at 12.)  Mr. Mason testified that over the past several years, Defendant's employees have removed the outer rim of plants from the sidewalk squares, because "cars were jumping the curb and killing the plants on the outside," and salt from snow storms was also killing them.  (<u>Id.</u> at 12-13.)  However, Mr. Mason does not recall whether the plants were removed before or after 2005, when the incident occurred.  (<u>Id.</u> at 13.)  Furthermore, Defendant's employees removed roses and red barberry out of the first square, where Plaintiff fell, due to damage from passing cars, but those plants remain in the other sidewalk planters. (<u>Id.</u> at 17-19.)  According to Mr. Mason, it was building manager Ed Rupp's decision to leave the first square with no foliage except the tree and surrounding mulch.  (<u>Id.</u> at 15.)

Mr. Mason's crew spreads mulch evenly throughout the squares twice a year, because it deteriorates, breaks down, and blows away.  (<u>Id.</u> at 13-14, 24.)  According to Mr. Mason, aesthetics and weed control are the main purposes of mulching, as opposed to

6

keeping the height of the square level with the sidewalk. (Id. 21-22.) However, Mr. Mason testified that the mulch does decrease in terms of actual height. (Id. at 25.) When looking at a photograph of the last square, Mr. Mason testified that "it is not quite even with the sidewalk." (Id. at 20.)

### d. Medical Report

According to the medical report compiled by Dr. James Aragona, an Orthopaedic Surgeon, Plaintiff underwent multiple medical procedures on his right knee. (Carvajal Cert. Ex. F at 1-8.) On August 29, 2005, Dr. Sam Sydney performed arthroscopic surgery for a torn medial meniscus of Plaintiff's right knee. (Id. at 1.) Dr. Sydney's records indicate that the surgery occurred after plaintiff had twisted his knee twice, once at Harrah's and once two weeks later at a yard sale when he was lifting boxes. (Id. at 5.) According to Dr. Sydney's records, Plaintiff fell and injured his right knee twice after the initial surgery. (Id.) Hospital records indicate that Dr. Sydney then performed a second surgery, arthroscopic irrigation and debridement, on September 16, 2005. (Id. at 2-3.) Plaintiff continued to suffer pain, and on November 16, 2006, Plaintiff received a total knee replacement by Dr. Sydney. (Id. at 6.) According to Dr. Aragona, Plaintiff will endure a lifetime of precautions due to the total knee replacement. (Id. at 8.) Dr. Aragona believes that Plaintiff's fall at Harrah's was "the

7

direct cause of his subsequent knee surgery, septic arthritis, degenerative and painful knee condition and final total knee replacement." (Id.)

### B. Procedural History

Plaintiff Robert Roth filed the suit for negligence against Defendant Harrah's Atlantic City, Inc. on June 4, 2007 [Docket Item 1]. Pursuant to a Consent Order entered January 14, 2008 [Docket Item 12], the Docket and Complaint were amended to substitute Marina Associates for Harrah's Atlantic City, Inc., and Harrah's was dismissed as a Defendant to this action. Defendant Marina Associates filed this motion for summary judgment on March 31, 2009 [Docket Item 22].

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©). In deciding whether there is a disputed issue of material fact, the Court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 255 (1986)).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

Although entitled to the benefit of all justifiable inferences from the evidence, "the nonmoving party may not, in the face of a showing of a lack of a genuine issue, withstand summary judgment by resting on mere allegations or denials in the pleadings; rather, that party must set forth 'specific facts showing that there is a genuine issue for trial,' else summary judgment, 'if appropriate,' will be entered."  United States v. Premises Known as 717 South Woodward Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993) (quoting Fed. R. Civ. P. 56(e)) (citations omitted).

**B.   Analysis**

Defendant raises a series of arguments in support of its summary judgment motion.  The Court addresses these arguments, and explains why Defendant is not entitled to summary judgment, below.

       1.   Whether Defendant had a Duty to Maintain the Landscaping Bed in a Reasonably Safe Condition

As the New Jersey Supreme Court recently summarized, "[b]usiness owners . . . owe a duty to provide a safe environment

to the people they invite onto their premises." Bauer v. Nesbitt, 198 N.J. 601, 615 (2009) (internal quotations and citations omitted). It is established that business owners owe a higher degree of care to business invitees than to social guests or licensees. Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 433 (1993). This duty is imposed because, unlike social guests, business guests are invited onto the premises for the benefit of the owner, often in a commercial or business related manner, id., and business owners are in "the best position" to prevent harm to their patrons. Bauer, 198 N.J. at 615. Thus, to protect business invitees, "every owner of a commercial establishment inviting the public onto its premises 'owes a reasonable duty of care to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe.'" Id. (quoting Jerista v. Murray, 185 N.J. 175, 191 (2005)); see Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 563 (2003); see also Hopkins, 132 N.J. at 434 (holding that landowners must "guard against any dangerous conditions on his or her property that the owner either knows about or should have discovered."). Furthermore, a landlord must make reasonable inspections of the premises to discover hidden dangerous conditions. Hopkins, 132 N.J. at 434.

However, the duty to maintain a safe premises only extends to the area "within the scope of the invitation." Butler v. Acme

Markets, Inc., 89 N.J. 270, 275 (1982).  The area of invitation can vary depending on the circumstances, and it "extends to all parts of the premises to which [t]he purpose may reasonably be expected to take him, and to those which are so arranged as to lead him reasonably to think that they are open to him." Williams v. Morristown Mem'l Hosp., 59 N.J. Super. 384, 389 (App. Div. 1960) (quoting Prosser on Torts, s 78, p. 458 (1955)). Whether a Plaintiff has exceeded the reasonable scope of his invitation is generally a question for the jury.  Monheit v. Rottenberg, 295 N.J. Super. 320, 325 (App. Div. 1996); Williams, 59 N.J. Super. at 390; Gudnestad v. Seaboard Coal Dock Co., 15 N.J. 210, 219 (1954).  At times, the scope of the invitation is clearly defined, but "questions pertaining to the scope of the invitation and whether the entrant has exceeded that which is authorized are within the jury's domain."  Mohheit, 295 N.J. Super at 325.  Where, through an alleged implied invitation, the invitee deviates from land where he is undoubtedly permitted to stand and walks onto land immediately adjacent thereto, the jury should decide whether that land is within the boundaries of his invitation.  Gudnestad, 15 N.J. at 219.

Applying this authority to the facts presented here, the Court concludes, first, that Defendant owed a duty of care to maintain its premises in a reasonably safe condition because Plaintiff was a business invitee, and, second, that the question

11

of whether Plaintiff's actions in taking a step off of the sidewalk and onto the mulch were within the scope of Defendant's duty remains a question for the jury.  As to the first point, Plaintiff is undisputedly considered a business invitee, as he was a patron of the hotel and was on his way to his car after checking out.  (Roth Dep. at 57.)  Moreover, the incident in this case occurred in a landscaping bed built into a sidewalk that was maintained by Defendant on Defendant's premises.  (Id. at 74; Compl. ¶¶ 4-5.)

As to the second point, the scope of the Defendant's invitation to Plaintiff extends to all areas where Plaintiff could reasonably have been expected to walk.  Williams, 59 N.J. Super. at 389.  In this case, Plaintiff was unquestionably permitted to walk on the sidewalk.  Whether he could reasonably have been expected to step accidentally into an unmarked landscaping bed is a jury question. See Gudnestad, 15 N.J. at 219.  As in Gudnestad, where the New Jersey Supreme Court held that a jury should decide whether land adjacent to an area within an invitation is within the scope of the invitation, here, Plaintiff made a misstep into a landscaping square adjacent to the pedestrian walkway.  (Roth Dep. at 63.)  It is ultimately a question for a jury to decide whether Plaintiff's actions were reasonably foreseeable or whether they were outside the borders of his invitation.  See Monheit, 295 N.J. Super. at 325.

2.   <u>Whether Uneven Ground Proximate to a Walkway can be a Dangerous Condition</u>

In the motion for summary judgment, Defendant argues that a dangerous condition did not exist for which Defendant was responsible.  However, as the Court explains below, under New Jersey law, a drop-off in or on the edge of a walkway can be considered a dangerous condition that a landlord must maintain in a reasonably safe condition if the landlord had actual or constructive knowledge of the condition.

Under New Jersey law, a dangerous condition is "a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used."  N.J.S.A. 59:4-1(a).  Uneven ground in walkway areas can be considered a dangerous condition.  <u>See</u> <u>Roman v. City of Plainfield</u>, 388 N.J. Super. 527, 539 (App. Div. 2006) (holding that "the uneven and disrupted sidewalk created a dangerous condition on private party"); <u>see also</u> <u>Hawes v. New Jersey Dep't of Transp.</u>, 232 N.J. Super. 160, 162 (L. Div. 1988) (noting that a dangerous condition refers to the "physical condition of the property itself, such as uneven sidewalk").  Moreover, a drop-off at the edge of a road or path can also create a dangerous condition.  For example, the New Jersey Appellate Division held that a drop-off of two to six inches on the shoulder of a roadway could be a dangerous

condition because it rendered the street unsafe for vehicles. Furey v. County of Ocean, 273 N.J. Super. 300, 314-15 (App. Div. 1994).  Additionally, a three and one-half inch drop-off at the edge of a lawn, onto a sidewalk, may be a dangerous condition, depending on the visibility of the drop and the care used in maintaining the edges of the lawn.  Filipowicz v. Diletto, 350 N.J. Super. 552, 562 (App. Div. 2002).

In this case, Plaintiff's deposition testimony indicates that there was a several-inch drop-off immediately adjacent to a narrow pathway on the sidewalk, which, Plaintiff argues, created a hazardous condition for pedestrians.  As in Furey, where the drop-off at the edge of a roadway could be considered dangerous, 273 N.J. Super. at 314-15, here, whether the drop-off at the edge of the sidewalk was a dangerous condition is a question for the jury.  In both cases, the drop existed alongside the area where cars were permitted to drive or people were permitted to walk. Id.; (Wasilauskas Cert. Ex. D at 1-3; Roth Dep. at 63.) Moreover, as in Filipowicz, which involved a drop-off from a lawn during a garage sale, this case also involves a fall that occurred with a business invitee on the premises.  The court in Filipowicz held that the height differential could constitute a dangerous condition, but that it was for the jury to evaluate other factors, such as the visibility of the drop, and whether the owner mowed and trimmed the lawn, which was overgrown in that

14

case.  350 N.J. Super. at 562.  Similarly, in this case, a height differential of several inches also existed, and the jury can evaluate whether Defendant's employees took proper care of the landscaping square through mulching and other techniques and whether the mulched square was visible to invitees on the walkway.  Under New Jersey law, the height differential that existed between the sidewalk and landscaping square, which Plaintiff's evidence indicates was an unmarked drop-off adjacent to the walkway, can be considered a dangerous condition, and presents a jury question in this negligence action.[4]

### 3. Breach and Causation

Defendant claims summary judgment should be granted because Plaintiff cannot prove Defendant breached its duty of care.  Defendant argues that there is no proof that it had notice of a dangerous condition or that Defendant failed to comply with industry standards, and therefore, Plaintiff cannot prove

---

[4] In opposing Defendant's motion, Plaintiff raises the issue of spoliation of evidence, based upon the fact that photographs of the scene taken by Harrah's staff are missing from the evidence.  Spoliation is the "destruction of evidence or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Mosaid Techs. Inc. v. Samsung Elecs. Co., 348 F. Supp. 2d 332, 335 (D.N.J. 2004).  The spoliation inference permits a jury to infer that "destroyed evidence might or would have been unfavorable to the position of the offending party." Scott v. IBM Corp., 196 F.R.D. 233, 248 (D.N.J. 2000).  As the preceding discussion makes clear, the Court finds that a jury question is presented here as to the existence of a dangerous condition, irrespective of the question of spoliation.  Plaintiff has not raised the matter of spoliation in a proper motion for discovery sanctions, and accordingly, the Court does not address the matter herein.

15

Defendant breached a duty.  As the Court explains below, it finds that a jury question exists as to whether Defendant had constructive notice of the allegedly dangerous condition.

Although business owners have a duty to invitees to maintain the premises in a reasonably safe condition, whether the owner breached this duty depends in part on whether "the defendant had actual or constructive knowledge of the dangerous condition that caused the accident."  Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 563 (2003).  "Constructive knowledge refers to notice that a particular condition existed for such a length of time as reasonably to have resulted in knowledge of the condition, had the owner . . . been reasonably diligent."  Kempf v. Target Corp., No. 06-1935, 2008 WL 305457, at *2 (D.N.J. Jan. 31, 2008) (citing Parmenter v. Jarvis Drug Store, 48 N.J. Super. 507, 510 (App. Div. 1957)).  Thus, if an owner has notice of a dangerous condition on the premises, or if the condition existed for such a length of time that the owner should have known of it, and if the owner fails to render the condition reasonably safe, the owner has breached its duty.  Id.

The question of breach of duty is generally a jury question. See Filipowicz, 350 N.J. Super. at 561.  "It is the function of the jury to determine the condition of the property and the reasonableness of defendant's care."  Id.  For example, in Filipowicz, the court determined it was for the jury to decide

16

whether an overgrown lawn blocking the view of a drop-off created an unreasonable risk of harm.  Id.

In this case, a jury could reasonably find that Defendant had constructive notice of the uneven ground.  Plaintiff testified that when he stepped into the landscaping bed, the height differential was deep enough to cover his entire foot, approximately several inches.  (Roth Dep. at 93.)  According to James Mason, Sr., Defendant's head groundskeeper, mulch is added to the square twice a year, after it deteriorates and blows away.  (Mason Dep. at 13-14, 24.)  Mr. Mason also testified that over time the mulch decreases in height, agreeing with the proposition that over a period of time there is "a noticeable lessening of the mulch" contained in the sidewalk square.  (Id. at 24-25.)  The Court agrees with Plaintiff that a factfinder could reasonably infer from Plaintiff's testimony concerning the height difference between the mulch and the walkway on the date of the accident, and from Mr. Mason's testimony concerning the gradual deterioration of the mulch, that a several-inch depletion of mulch had existed for such time that Defendant should reasonably have known of the condition. See Kempf, 2008 WL 305457 at *2; Parmenter, 48 N.J. Super. at 510; see also Hunt, 526 U.S. at 552 (at summary judgment "all justifiable inferences" are drawn in the non-movant's favor).  That is, if the mulch had deteriorated to the point that a several-inch drop-off below the sidewalk

17

existed, and if Defendant replenished the mulch only twice a year to remedy such gradual deterioration, then the jury could conclude that the condition had existed for a significant time before Plaintiff's accident.  The factfinder would not be compelled to draw such an inference, but it could permissibly do so.

Once it is decided whether the Defendant had notice of the condition, the question becomes whether Defendant breached the duty by failing to remedy the situation.  As in Filipowicz, where the court held that it was up to the jury to decide whether obscuring a drop-off by not mowing and trimming the lawn was a breach, in this case, the issue of whether failure to add mulch to the square in order to render the surface even with the surrounding sidewalk, or a failure to make the planter more conspicuous with markings or other warnings, constitutes a breach of duty presents a jury question.  See Filipowicz, 350 N.J. Super at 561.

Nor can the Court agree with Defendant that Plaintiff must present expert testimony to assist the jury in determining whether a height differential in a sidewalk was dangerous or whether the height differential proximately caused Plaintiff's accident.  Expert testimony is only needed to determine what is dangerous when "the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid

18

judgment as to whether the conduct of the party was reasonable." Butler v. Acme Markets, Inc., 89 N.J. 270, 283 (1982).  For cases involving uneven sidewalks, expert testimony is generally not required, because the topic is "well within a juror's common knowledge."  Chalifa v. Mayor and City Council of Balt., No. 92-1112, 1993 WL 50514, at *3 (4th Cir. 1993).  As the court explained in Chalifa, "[t]he potential danger was fairly obvious, and a jury should be competent to decide whether the defendant maintained the footbridge in an unreasonably dangerous condition."  Id.

In this case, expert testimony is not required to determine whether the several-inch drop-off of a sidewalk tree planter is a dangerous condition or whether Defendant breached its duty by not maintaining the premises in a reasonably safe way, or whether stepping into the planter caused Plaintiff's accident. Determining whether uneven ground in a sidewalk or a drop-off into a mulched planter is dangerous is not an "esoteric" topic that requires special knowledge or understanding; deciding whether a drop-off is unreasonably dangerous is "fairly obvious" for a jury, and a jury should be capable of determining if the walkway was maintained in an unreasonably dangerous way without the assistance of an expert.  Chalifa, 1993 WL 50514 at *3. Likewise, the jury can rely upon Plaintiff's account of the accident, or reject his account, in determining whether the

19

allegedly dangerous condition caused him to fall, which similarly does not present an esoteric issue beyond the ken of jurors.  See id.; see also Beadling v. William Bowman Assocs., 355 N.J. Super. 70, 88 (App. Div. 2002) ("Ordinarily, questions of proximate cause are left to the jury for its factual determination"); Scafidi v. Seiler, 119 N.J. 93 (1990); Perez v. Wyeth Labs. Inc., 161 N.J. 1, 27 (1999).[5]

### III. CONCLUSION

For the reasons explained above, the Court will deny Defendant's motion for summary judgment.  The accompanying Order is entered.

**August 11, 2009**                                      **s/ Jerome B. Simandle**
Date                                                      JEROME B. SIMANDLE
                                                          United States District Judge

---

[5]  Defendants do not appear to argue that Plaintiff's proofs on medical causation are insufficient.  Plaintiff's medical expert, who opines that Plaintiff's "fall on June 5, 2005 was the direct cause of his subsequent knee surgery, septic arthritis, degenerative and painful knee condition and final total knee replacement," (Carvajal Cert. Ex. F at 8), is sufficient to present a jury question on the causal link between the accident and Plaintiff's injuries.